**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

DAX INTERNATIONAL BROKERS, INC. Case No. 26-15092-CLC
Chapter 11

Debtor.
_______________________________________/

# DAX INTERNATIONAL BROKERS, INC.'S CHAPTER 11 PLAN OF REORGANIZATION, DATED AUGUST 20, 2026

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Dax International Brokers, Inc. (the "Debtor") from an influx of capital from new investors, disposable income of the Debtor, and new value provided by Debtor's shareholders.

This Plan provides for ten (10) classes of secured claims; one (1) class of unsecured claims; and one (1) class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponents of this Plan has valued at $953,742.96. This Plan also provides for the payment of administrative claims in full on the Effective Date of this Plan, or upon such other terms as agreed to between the Debtor and the administrative claimant.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

2.01 Unclassified Claims. Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes.

2.02 Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 of the Code or any super-priority claims will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed

upon by the holder of the claim and the Debtor. The Debtor requests that the Court set an administrative claims bar date of fifteen (15) days after the date of confirmation of this Plan.

2.03 Priority Tax Claims. Each holder of a priority tax claim, to the extent any exist, will be paid either in full on the Effective Date of this Plan, or over a term of sixty (60) months, as further set forth below.

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| *Allowed Priority Claim of:* **Broward County Tax Collector** | $25,000.00 | 2026 | Pmt interval = Sixty (60) Months<br>Monthly payment = $634.84<br>Begin date (approx.) = 10/1/2026<br>End date (approx..) = 9/31/2031<br>Interest Rate % = 18%<br>Total Payout Amount = $38,090.14 |
| *Allowed Priority Claim of:* **Miami-Dade Tax Collector** | $60,000.00 | 2026 | Pmt interval = Sixty (60) Months<br>Monthly payment = $1,532.61<br>Begin date (approx.) = 10/1/2026<br>End date (approx..) = 9/31/2031<br>Interest Rate % = 18%<br>Total Payout Amount = $91,416.34 |
| *Allowed Priority Claim of:* **State of Florida-Department of Revenue** | $255,797.51 | 2026 | Pmt interval = Sixty (60) Months<br>Monthly payment = $5,690.07<br>Begin date (approx.) = 10/1/2026<br>End date (approx..) = 9/31/2031<br>Interest Rate % = 12%<br>Total Payout Amount = $341,404.46 |
| *Allowed Priority Claim of:* **United States Department of Revenue- Internal Revenue Service** | $8,401.93 | 2026 | Pmt interval = Sixty (60) Months<br>Monthly payment = $213.35<br>Begin date (approx.) = 10/1/2026<br>End date (approx..) = 9/31/2031<br>Interest Rate % = 18%<br>Total Payout Amount = $12,801.23 |

2.04 United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Specifically, the Debtor will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of this Plan, within fourteen (14) business days of the entry of an order confirming this Plan. Furthermore, the Debtor (as reorganized) will file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting

this case to another Chapter under the U.S. Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.01 Class 1. The secured claim of Amerant Bank, N.A.

3.02 Class 2. The secured claim of United States Small Business Administration

3.03 Class 3. The secured claim of Ford Motor Credit Company, LLC

3.04 Class 4. The secured claim of Ford Motor Credit Company, LLC

3.05 Class 5. The secured claim of Navitas Credit Corp.

3.06 Class 6. The secured claim of Navitas Credit Corp.

3.07 Class 7. The secured claim of Navitas Credit Corp.

3.08 Class 8. The secured claim of Atlas Small Business Finance, Inc.

3.09 Class 9. The secured claim of Noetinger 94, Corp.

3.10 Class 10. The secured claim of Noetinger 94, Corp.

3.11 Class 11. All unsecured claims allowed under §502 of the Code.

3.12 Class 12. All equity holders.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| **Class #** | **Description** | **Insider** | **Impairment** | **Treatment** |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **1** | *Allowed Secured Claim of*: Amerant Bank, N.A.<br><br>Collateral Description = Blanket lien on all of the Debtor's tangible and intangible property<br><br>Allowed Secured Amount= $3,323,451.38<br><br>Priority of lien= First Position<br>Principal owed= $2,742,750.63<br><br>Total claim = 3,323,451.38 | No. | Yes. | Monthly Pmt = $7,633.50<br><br>Interest rate = 7.5%<br><br>Begin Date= October 1, 2026 (approximate)<br><br>End Date= September 31, 2041<br><br>Treatment of Lien = Amerant Bank, N.A. shall receive $2,500,000.00 paid towards the principal of its loan in the following amounts:<br>1) $500,000 to be paid within twenty (20) days of the Effective Date of the plan;<br>2) $500,000.00 to be paid within one hundred and twenty (120) days of the Effective Date of the plan;<br>3) $500,000.00 to be paid within two hundred and forty (240) days of the Effective Date of the plan; and<br>4) $1,000,000.00 to be paid within three hundred and sixty five (365) days of the Effective Date of the plan.<br>The remaining claim of $823,451.38 shall be paid over one hundred and eighty (180) monthly payments of principal and interest of $7,633.50 at a 7.5% per annum interest rate. Amerant Bank, N.A. shall maintain its first position security interest in all collateral during the pendency of all payments under this Chapter 11 Plan. At the conclusion of the payments, Amerant Bank, N.A. shall cause to be recorded any and all documentation to release the liens against the collateral. |

| | | | | |
|---|---|---|---|---|
| **2** | *Allowed Secured Claim of*: United States Small Business Administration<br><br>Collateral Description = Blanket lien on all of the Debtor's tangible and intangible property<br><br>Allowed Secured Amount= $1,914,448.53<br><br>Priority of lien= Second Position<br>Principal owed= $1,914,448.53<br><br>Total claim = $1,914,448.53 | No. | No. | The Debtor shall continue to pay the promissory note owe to the United States Small Business Administration under the same terms and schedule as previously agreed. There was no deficiency or arrearage at the time of filing of this case. The United States Small Business Administration's liens shall remain in position in the same priority and amounts as prior to filing. |
| **3** | *Allowed Secured Claim of*: Ford Motor Credit Company, LLC<br><br>Collateral Description = VIN: 1FTBF4X89MKA34572<br><br>Allowed Secured Amount= $817.61<br><br>Priority of lien= First Position<br>Principal owed= $816.44<br><br>Total claim = $817.61 | No. | No. | The Debtor shall continue to pay the promissory note owe to Ford Motor Credit Company, LLC under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Ford Motor Credit Company, LLC's liens shall remain in position in the same priority and amounts as prior to filing. |

| | | | | |
|---|---|---|---|---|
| **4** | *Allowed Secured Claim of*: Ford Motor Credit Company, LLC<br><br>Collateral Description = VIN: 1FTBR3X83MKA89973<br><br>Allowed Secured Amount= $6,557.53<br><br>Priority of lien= First Position<br>Principal owed= $6,549.21<br><br>Total claim = $6,557.53 | No. | No. | The Debtor shall continue to pay the promissory note owe to Ford Motor Credit Company, LLC under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Ford Motor Credit Company, LLC's liens shall remain in position in the same priority and amounts as prior to filing. |
| **5** | *Allowed Secured Claim of*: Navitas Credit Corp.<br><br>Collateral Description = Certain Office Equipment and Furniture as described in Proof of Claim No. 27, Schedule A<br><br>Allowed Secured Amount= $6,137.31<br><br>Priority of lien= First Position<br>Principal owed= $6,137.31<br><br>Total claim = $6,137.31 | No. | No. | The Debtor shall continue to pay the promissory note owe to Navitas Credit Corp. under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Navitas Credit Corp.'s liens shall remain in position in the same priority and amounts as prior to filing. |

| | | | | |
|---|---|---|---|---|
| **6** | *Allowed Secured Claim of*: Navitas Credit Corp.<br><br>Collateral Description = Certain Office Equipment and Furniture as described in Proof of Claim No. 28, Schedule A<br><br>Allowed Secured Amount= $19,776.74<br><br>Priority of lien= First Position<br>Principal owed= $19,776.74<br><br>Total claim = $19,776.74 | No. | No. | The Debtor shall continue to pay the promissory note owe to Navitas Credit Corp. under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Navitas Credit Corp.'s liens shall remain in position in the same priority and amounts as prior to filing. |
| **7** | *Allowed Secured Claim of*: Navitas Credit Corp.<br><br>Collateral Description = 2018 Crown Forklift Model SP3530-30<br><br>Allowed Secured Amount= $11,685.78<br><br>Priority of lien= First Position<br>Principal owed= $11,685.78<br><br>Total claim = $11,685.78 | No. | No. | The Debtor shall continue to pay the promissory note owe to Navitas Credit Corp. under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Navitas Credit Corp.'s liens shall remain in position in the same priority and amounts as prior to filing. |

| | | | | |
|---|---|---|---|---|
| **8** | *Allowed Secured Claim of*: Atlas Small Business Finance, Inc.<br><br>Collateral Description = Assorted Office Furniture<br><br>Allowed Secured Amount= $19,509.22<br><br>Priority of lien= First Position<br>Principal owed= $19,509.22<br><br>Total claim = $19,509.22 | No. | No. | The Debtor shall continue to pay the promissory note owe to Atlas Small Business Finance, Inc. under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Atlas Small Business Finance, Inc.'s liens shall remain in position in the same priority and amounts as prior to filing. |
| **9** | *Allowed Secured Claim of*: Noetinger 94, Corp.<br><br>Collateral Description = 2016 International<br><br>Allowed Secured Amount= $36,415.32<br><br>Priority of lien= First Position<br>Principal owed= $36,415.32<br><br>Total claim = $36,415.32 | No. | No. | The Debtor shall continue to pay the promissory note owe to Noetinger 94, Corp. under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Noetinger 94, Corp.'s liens shall remain in position in the same priority and amounts as prior to filing. |

| | | | | |
|---|---|---|---|---|
| **10** | *Allowed Secured Claim of*: Noetinger 94, Corp.<br><br>Collateral Description = VIN-1HTKSSWM5NH797835<br><br>Allowed Secured Amount= $36,415.32<br><br>Priority of lien= First Position<br>Principal owed= $36,415.32<br><br>Total claim = $36,415.32 | No. | No. | The Debtor shall continue to pay the promissory note owe to Noetinger 94, Corp. under the same terms and schedule as previously agreed. The arrearage shall be paid in full on the Effective Date of the plan. Noetinger 94, Corp.'s liens shall remain in position in the same priority and amounts as prior to filing. |
| **11** | General Unsecured Creditor Claims | This class contains unsecured insider claims of Diego Capurro, Alejandro Randazzo and their wholly owned LLC's. The remainder of the claims are not insider claims. | Yes. | The members of this class shall receive a pro rata distribution of thirty-six percent (36%) of the total unsecured claims over the course of fifteen (15) years with a five percent (5%) interest rate.<br><br>Principal Amount- $994,275.15<br><br>Interest Rate: 5%<br><br>Total Payments- $1,289,228.61<br><br>Monthly Payment- $7,862.66 |

| | | | | |
|---|---|---|---|---|
| **12** | Equity Ownership Interests of Diego Capurro and Alejandro Randazzo | Yes. | Yes | The Debtor shall be issuing new equity interests to Kitchen Center, S.p.A./Inversiones Santa Elisa Uno S.p.A. in exchange for an investment of $2,500,000.00. As such, the equity positions of Diego Capurro and Alejandro Randazzo shall be reduced from fifty percent (50%) each of all outstanding shares in the Debtor to twenty-five percent (25%) each of all outstanding shares in the Debtor. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed.

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan, or other applicable date:

1) Commercial lease with Terreno Melanie LLC and Terreno Melanie II, LLC;

2) Commercial lease with JJ Realty, LLC; and

3) Commercial lease with J.P. of South Florida, LLC.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

The means necessary for the execution of this Plan include the Debtor's income derived from an investment in the Debtor by Kitchen Center, S.p.A./Inversiones Santa Elisa Uno S.p.A., the disposable income of the Debtor and new value contributions by the Debtor's existing equity holders. The new investor will be obtaining a fifty percent (50%) equity position in the reorganized Debtor in exchange for the $2,500,000.00 investment, which will be new equity issued by the Debtor.

To the extent that the Debtor wishes to prepay any amounts due under the Plan from exempt assets or other third party sources, the Debtor reserves the right to do so without penalty and to seek the entry of a final decree closing this case. The Debtor, as reorganized, will retain and will be re-vested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to this Plan and property transferred to Creditors of the Debtor pursuant to the expressed terms hereof. The retained property shall be used by the Debtor in the ordinary course of its affairs.

**ARTICLE VIII**
**GENERAL PROVISIONS**

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a) *Allowed Secured Claim* - shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under 11 U.S.C. § 553, but in any event only to the extent of the value, determined in accordance with 11 U.S.C. § 506(a), of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

(b) *Allowed Undersecured Claim* - shall mean the amount of a prepetition secured Claim that exceeds the value of the collateral securing that Claim and is therefore

unsecured.

(c) *Allowed Unsecured Claim* - shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court, if any.

(d) *Causes of Action* - shall be used in its broadest sense and shall include all causes of action of the Debtor and all causes of action which a Trustee would have if the proceedings were converted on the confirmation date to a proceeding under Chapter 7 of the Code and a Trustee were appointed. Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under judicial decisions, whether or not they are the subject of presently pending litigation and whether they arise before or after the confirmation date, as well as rights belonging to the Debtor pursuant to 11 U.S.C. §§ 506, 510, 544, 545, 547, 548, 549 or 550.

(e) *Claim* - shall mean any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

8.02 Amount of Allowed General Unsecured Claims. The Debtor's scheduled undersecured and general unsecured claims are set forth in its Schedules D and F. The aggregate amount of claims included in Class 11 (General Unsecured Claims) is $2,687,230.14.

Based upon the distribution amount of $953,742.96, allowed general unsecured claimants will receive a distribution of 37%. This distribution is the same or higher than what allowed general unsecured claimants would receive in a hypothetical Chapter 7, in which case the Debtor estimate that such claimants would receive a distribution of 36%.

8.03. Liquidation analysis. This estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's non-exempt property. The Debtor's real property is secured and does not have equity. The Debtor's non-exempt personal property is valued at $994,275.15, based on the values set forth in the Debtor's bankruptcy. As such, the unsecured creditors are receiving as much or more than they would receive if this case were a Chapter 7 liquidation. A more detailed liquidation analysis is set forth in the Disclosure Statement that accompanies this Plan. Accordingly, creditors are receiving more by virtue of this Plan, then they would if the Debtor's case were a Chapter 7 proceeding.

8.04. Effective Date of Plan. The Effective Date of this Plan is the fifteenth (15th) business day following the date of the entry of the order of confirmation. However, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day

after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.05. Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.06. Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.07. Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.08. Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.09. Notice to Class 11 General Unsecured Creditors. Pursuant to 11 U.S.C. § 1129(a)(15), if you object to confirmation to the Plan, the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtor (beginning on the date that the first payment is due under the Plan (or during the period for which the Plan provides payments, whichever is longer). Pursuant to the Plan, the value of the property to be distributed to Class 8 General Unsecured Creditors under the Plan 994,275.15 is more than the general unsecured claims filed in this matter would receive in a liquidation.

## ARTICLE IX
## DISCHARGE

On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141(d)(6)(B).

## ARTICLE X
## EFFECT OF CONFIRMATION

10.01. Vesting of Assets. Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the Estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

10.02. Binding Effect. Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on

and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and her respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

10.03. Injunction Against Interference with Plan. Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with its respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

10.04. Other Effect(s) of Confirmation. If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE XI
## OTHER PROVISIONS

11.01. Reservation of Rights Under Section 1129(b). The Debtor expressly reserves the right, pursuant to Section 1129(b) of the Bankruptcy Code, to request the Court to confirm this Plan if all of the applicable requirements of Section 1129(a) of the Bankruptcy Code has been met, other than those of Section 1129(a)(8).

11.02. Reservation of Right to Modify Plan Post-Confirmation. The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan. Any such request to modify this Plan shall be noticed to all creditors and interested parties, and no modification shall be granted absent proper notice and hearing.

11.03. Disbursing Agent. All distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.

11.04. Post-Petition Interest on Claims. Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

11.05. Delivery of Distributions and Undeliverable Distributions. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtor or her agents, or in a letter of transmittal, unless the Debtor has

been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to any holder is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then- current address, at which time all missed distributions shall be made to such holder, without interest. All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made. Thereafter, the amount represented by such undeliverable distribution shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtor and its property.

11.06. Time Bar to Cash Payments. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect to such voided check shall be made on or before thirty (30) days after the expiration of one hundred and eighty (180) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be donated by the Debtor to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida. At such time, any Claim with respect to such voided check shall be discharged and forever barred.

The Plan of Reorganization is dated August 20, 2026 and his hereby approved by the undersigned.

Respectfully submitted,




Alejandro Randazzo, as Secretary of Dax International Brokers, Inc.

/s/ Nicholas G. Rossoletti, Esquire
Nicholas G. Rossoletti, Esquire
Attorney for Plan Proponent